IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LIZ JENNY GUINN,

    Plaintiff,

v.                                                                              No. 16-cv-0689 SMV

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 20] ("Motion"), filed on May 9, 2017. The Commissioner responded on April 28, 2017. [Doc. 24]. Plaintiff replied on June 5, 2017. [Doc. 27]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") impermissibly failed to explain why she rejected a portion of Dr. Cherry's opinion. Accordingly, the Motion will be granted and the case remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Procedural Background

Plaintiff applied for a period of disability and disability insurance benefits on October 10, 2011. Tr. 21. She alleged a disability-onset date of June 28, 2011. *Id.* Her claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Donna Montano held a hearing on August 14, 2014, in Albuquerque, New Mexico. Tr. 21, 37−73. Plaintiff appeared in person and was represented by an attorney. Tr. 21, 37. The ALJ heard testimony from Plaintiff and an impartial vocational expert, Mary Diane Weber. Tr. 21, 69–70.

The ALJ issued her partially favorable decision on January 30, 2015. Tr. 31. Initially, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017. Tr. 23. At step one she found that Plaintiff had not engaged in substantial gainful activity since the onset date of her alleged disability. *Id.* Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There she found that Plaintiff suffered from the following severe impairments: "morbid obesity, osteoarthritis of the bilateral knees, affective disorder, diabetes mellitus, substance abuse disorder in remission, and alcohol dependence in partial remission." Tr. 24. At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 24–25.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 25–29. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §] 416.967(b) except she can understand, carry out and remember simple instructions and make commensurate work related decisions, respond appropriately to supervision, coworkers

>     and work situations, deal with routine changes in work setting, maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout the day.

Tr. 25. At step four the ALJ found that Plaintiff could not return to her past relevant work. Tr. 29. Proceeding to step five, the ALJ considered Plaintiff's RFC, age, education, and work experience. She applied the medical vocation guidelines ("grids" or "grid rules") to find that Plaintiff was disabled beginning September 14, 2014. Tr. 29–31. The ALJ found that prior to September 14, 2014, Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. Tr. 30. Plaintiff requested review from the Appeals Council as to the unfavorable portion of the ALJ's decision, but that request was denied on April 22, 2016. Tr.1. Plaintiff timely filed the instant action on June 24, 2016. [Doc. 1].

## Analysis

Remand is warranted because the ALJ erred in failing to explain why she rejected Dr. Cherry's assessment of certain moderate limitations. The Court declines to pass on Plaintiff's other alleged errors at this time.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."

5

*Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

Dr. Cherry offered a non-examining opinion that Plaintiff had moderate limitations in the ability to (1) "complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (2) "interact appropriately with the general public." Tr. 373. The ALJ gave "great weight" to Dr. Cherry's opinion. Tr. 28. Plaintiff argues, nevertheless, that the ALJ neither incorporated these limitations into the RFC, nor explained their omission. [Doc. 20] at 13–15. Therefore, as Plaintiff sees it, the ALJ failed to apply the correct legal standard in weighing Dr. Cherry's opinion. *Id.* The Court agrees.

Defendant's arguments in support of the ALJ's decision are unpersuasive. [Doc. 24] at 12–15. Defendant points to the agency's Program Operations Manual Systems ("POMS"),

6

discussing the Mental Residual Functional Capacity Assessment ("MRFCA") form on which Dr. Cherry's opinion is recorded. The POMS explains that Section I of the MRFCA form is "'*merely a worksheet*' designed to record summary conclusions regarding the general degree of limitations as well as the adequacy of documentation but it '*does not constitute the RFC assessment*.'" [Doc. 24] at 13 (quoting POMS DI § 24510.060 (emphasis in POMS, Defenant's alteration omitted)). Defendant cites several Tenth Circuit cases for the proposition that an ALJ need not "mention[] the moderate limitations indicated in Section I of the [MRFCA] form where the ALJ relie[s] on the state agency's ultimate opinion in Section III." *Id.* (citing *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), *Lee v. Colvin*, F. App'x 538 (10th Cir. 2015), *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013), *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015)). Defendant misrepresents both the POMS and circuit law on this issue. The ALJ may not rely on the Section III findings and ignore the Section I findings.

"The POMS' distinction between Section I and Section III is aimed at the doctor who completes the MRFCA form; *it is not material to how the ALJ weighs the nonexamining opinion*." *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. 2016) (emphasis added). To the contrary, the POMS explicitly and repeatedly requires the ALJ to consider nonexamining opinions in their entirety. *Silva*, 203 F. Supp. 3d at 1160–61 (surveying and discussing the authorities and citing *e.g.*, POMS § DI 24515.007(1)(b) ("All evidence from nonexamining sources is opinion evidence.")).

Like the POMS, the regulations also belie Defendant's position. *Id.* at 1161–62 (citing 20 C.F.R. §§ 404.1527(e)(2)(i), 404.1512(b)(1)(viii)). The regulations require the ALJ to consider the doctor's opinion in its entirety. There is no exception for the Section I findings.

In line with the POMS and the regulations, the case law also requires the ALJ to consider a doctor's opinion in its entirety. For example, in *Haga v. Astrue*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d 1205, 1208 (10th Cir. 2007). "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court, therefore, remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of nonexamining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

Defendant does not address *Haga* or *Frantz*. *See* [Doc. 24]. Instead, she cites to a few cases that, if read in a vacuum, could be misinterpreted as licensing an ALJ to ignore findings that are recorded in Section I. *See Smith*, 821 F.3d at 1269 n.2 ("Ms. Smith questions how the [ALJ]'s [RFC] assessment incorporates the moderate limitations indicated by Dr. Frommelt. This is the wrong question. . . . Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of [RFC]. We compare the [ALJ]'s findings to Dr. Frommelt's opinion on [RFC], not her notations of moderate limitations."); *Sullivan*, 519 F. App'x at 985 (acknowledging the POMS' distinction between Section I and Section III, rejecting the plaintiff's

8

argument that the Section I limitations are "in addition to those in Section III," and finding that the ALJ had relied on the Section III findings and was not required to discuss the Section I findings).

Considering the POMS, the regulations, and *Haga* and *Frantz*, the Court cannot interpret the relevant case law as supporting Defendant's argument that the ALJ in this case was permitted to give great weight to Dr. Cherry's opinion, without explaining why she did not account for his Section I findings in her RFC assessment. If the limitations assessed by Dr. Cherry in Section I were accounted for in Section III of his report, then Defendant's argument might hold water. *See Nelson v. Colvin*, No. 15-6226, 655 Fed. App'x 626 (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)).[4] An ALJ may rely exclusively on the Section III findings only with an essential caveat: the Section III findings must adequately account for the Section I findings. Acknowledging as much, Defendant argues that, here, the "ALJ's limitations adequately account for the moderate—not marked—limitations set forth in [Section I] of Dr. Cherry's opinion

---

[4] *See also Lee*, 631 Fed. App'x at 541 (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III.") (emphases omitted); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC. The ALJ did so here . . . . And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted); *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (acknowledging the POMS' distinction between Section I and Section III, but holding that an ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings); *Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC).

[because] simple unskilled work . . . involves *working with things rather than data or people* and *does not require extensive concentration*." [Doc. 24] at 14 (emphases added).

These aspects of unskilled work do not really address Plaintiffs' challenge. Plaintiff argues that her moderate limitations in the ability to (1) "complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (2) "interact appropriately with the general public" are not accounted for in the RFC. The ALJ limited Plaintiff to light, unskilled work.[5] Tr. 25. However, one of the mental abilities "critical" for performing unskilled work is the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (These requirements are usually strict.)" POMS DI § 25020.010(B)(3)(i). The RFC does not reflect all of the limitations assessed by Dr. Cherry, and the ALJ failed to explain why she omitted them. *See* Tr. 25–29.

## Conclusion

The ALJ erred in failing to explain why she rejected Dr. Cherry's assessment of certain moderate limitations. Remand is warranted on that ground, and the Court declines to address Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 20] is

---

[5] The ALJ's RFC in this case tracks, nearly verbatim, the mental demands of unskilled work. *Compare* Tr. 25 (RFC assessment), *with* POMS § DI 25020.010(A)(3) (describing the "mental demands of unskilled work").

**GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**